## Peter Gage and Wife vs. George W. Smith.

The plaintiff claimed, in an action of ejectment, certain land which had descended to her and her brother, since deceased, from their mother. The defendant held under a deed from the town of N., and claimed that, during a certain period preceding the conveyance to him, the town had held the land adversely. The plaintiff claimed that she and her deceased brother had been in possession during that period by one Q., their agent, who had been put in charge of the property by their mother, and remained in charge for several years after her death. By the account book of Q., since deceased, and by the account books of the town, which were offered in evidence by the plaintiff, it appeared that during the period in question Q. accounted to the town for the rents received by him from the property and that the town received the rents. The plaintiff, in connection with these documents, offered evidence to show that her brother during that period was supported by the town as a pauper, and that the rents were received by the town for the purpose of applying the same to his support. The defendant claimed that the entries on the account books of Q. and the town, did not tend to prove a possession in the plaintiff and her brother, but proved a possession in the town, and requested the court so to charge the jury. The court did not so instruct the jury, but submitted to them the question on all the evidence whether the town was in possession during the period in question. Held, on a motion of the defendant for a new trial, that this course was correct.

EJECTMENT. On the trial of the case to the jury it was admitted that, on the 10th day of April, 1804, the town of Norwalk was owner in fee of the demanded premises, and on that day executed and delivered to Hannah Marshall an instrument intended as a deed of the land, but which was defective as a conveyance, under which she immediately entered into possession, claiming title in fee, and erected a dwelling-house thereon, and enclosed the premises, and occupied the same, exclusively and adversely, till her marriage with one William Bates, in June, 1817; that soon after her marriage, and while she continued in possession, she and her husband constituted James Quintard, Jr., then of said Norwalk, but who died in 1848, their agent to take charge of the house and land, giving him a written power of attorney for the purpose, and that Quintard accepted the agency and entered upon the discharge of its duties; that at the time of her marriage she had two children, the plaintiff, Henrietta, and a son, Henry, since deceased; that soon after their mar-

riage she removed with her husband to Canada, and there remained till her death in the latter part of the year 1817, the said Bates continuing there till his death in 1844.

The plaintiff claimed to have proved that she and her heirs had, through the agency of Quintard, steadily and at all times after the marriage to the year 1826, had possession of the property; that Henrietta, the plaintiff, continued with her mother in Canada, and had always resided there, and that in January, 1825, the plaintiffs intermarried, and have ever since been husband and wife. And to prove such possession, they produced in evidence entries in the account books of Quintard, showing an account kept with Hannah Bates, of rents received from the property, and disbursements upon it, from September, 1818 to November, 1820, together with proof that the several persons named in the account as paying rent, in fact respectively occupied the property, at the times mentioned in the account, under Quintard as agent. The plaintiffs also claimed and offered evidence to prove that, after the death of said Hannah, her son Henry returned to Norwalk and became chargeable to the town as a pauper, and that Quintard, acting under the power of attorney given him by the said Hannah and her husband, and in behalf of her heirs, continued to let the property and receive the rents thereof until 1826, and paid over the rents to the town for the support of said Henry; and to prove these facts, offered in evidence another account in the books of Quintard, kept with the town of Norwalk from May 10, 1822 to Feb. 26, 1824, wherein he credited the town with the rents received, and charged the town with the disbursements on the property and the rents paid over to the town; and certain reports of the selectmen of Norwalk to the town from the year 1824 to the year 1829, showing receipts of rent from the property and the payment of money for the support of the said Henry.

The defendant requested the court to instruct the jury that the latter account and the reports of the selectmen did not show or tend to show the facts claimed by the plaintiffs, but that they did show that the town of Norwalk took possession

of said premises at the commencement of the account opened with the town by Quintard.

There was no other evidence tending to show that Quintard was ever the agent of the town of Norwalk, or ever acted as such in regard to the property. But the defendant claimed that the town in fact took possession of the property, claiming title, before the intermarriage of the plaintiffs, and held such possession adversely up to the.time of its conveyance to one Gregory in 1829, under whom the defendant claimed.

The court did not instruct the jury as claimed by the defendant, but left it to them to determine from all the evidence before them whether Quintard acted, during the time covered by his account with the town, as agent of the heirs of the said Hannah, or of the town of Norwalk.

The plaintiffs claimed that the town of Norwalk did not take possession of the premises till after the death of said Henry in 1826, and insisted that if the said Hannah occupied claiming title up to the time of her marriage with Bates, and Quintard occupied as agent of the heirs up to the year 1826 and after the marriage of the plaintiffs, no possession of the town thereafter taken could operate to divest the said Henrietta, she being then under coverture, of the title acquired by her by such possession up to 1826, whether the said Bates became, on the death of said Hannah, a tenant by the curtesy of the property or not.

But the plaintiff further claimed, and it was admitted, that the said Hannah, while living with said Bates in Canada, bore to him, shortly before her death, twin children born alive and which died shortly after their birth, and they therefore claimed that said Bates became tenant by the curtesy of the property, and so continued until his death in 1844, which was less than fifteen years before the commencement of this action. The defendants claimed, however, that inasmuch as the children were born in Canada and there died, they were aliens and could not inherit said property, and therefore that Bates could not be tenant by the curtesy thereof

(although it was conceded that said Bates and said Hannah were citizens of the United States) and they requested the court so to charge the jury.

The court charged the jury, that, for the purposes of this case, they were to take the law to be, that the twin children of Hannah Bates, though born in Canada, their parents being citizens of the United States, were capable of inheriting the property in controversy from their mother as her heirs, and that, if they found that said Hannah was the lawful wife of said Bates, then upon her death he became tenant by the curtesy of the property, and that during his life no title could be acquired by any person by adverse possession merely, as against the plaintiffs in this suit. That an adverse possession by the town of Norwalk, first commencing after the inter-marriage of the plaintiffs in 1825, though continued by the town and its grantees ever since, could be of no avail to defeat the title of the plaintiffs, or their right of recovery in this suit, or as against the plaintiffs to vest or perfect a title in the defendants, because of the coverture of the said Henrietta at the time of the commencement of such adverse possession, and its continuance to the present time. But that if the town in fact took possession of the property, claiming it as owner thereof, before the intermarriage of the plaintiffs, and continued its adverse possession up to and after such intermarriage, as the defendants claimed, then the coverture of the said Henrietta afforded no protection to the title whatever.

And in committing the cause to the jury the court instructed them to find and report to the court, whether the town of Norwalk took possession of the property, or demanded or received the rents thereof, claiming to be the owner, before the intermarriage of the plaintiffs, or not. The jury returned a verdict for the plaintiffs, and in answer to the instruction of the court upon the last point, the jury made the following reply: "In this case the jury also find, that Mrs. Marshall, and those holding for her or her heirs, were in possession of the premises from 1804 until 1826." The defendant moved for a new trial for error in the charge of the court.

*Dutton* and *Carter*, in support of the motion.

*Hawley* and *Ferry*, contra.

STORRS, C. J. The plaintiffs, on the trial of this case, relied on a title in fee to the demanded premises in. Mrs. Gage, claimed to have been acquired by her by virtue of a continuous adverse possession of said premises, first, by her mother, Mrs. Marshall, and afterwards by her heirs, for the period of more than fifteen years before the intermarriage of the plaintiffs; and the jury have found, on the point specially submitted to them by the court, that there was such a possession for that period. This finding, if it is to stand, plainly establishes the title of Mrs. Gage to the land,—her brother, the only other heir of her mother, having long since died leaving no children; and of course negatived the defence set up by the defendant, which was founded on a denial of the acquisition of the title by Mrs. Gage by virtue of an adverse possession, and also on a claim that if she thus obtained a title to the land, the town of Norwalk, by its subsequent disseisin of her for at least the period of fifteen years, had since acquired and is now the owner of it; because it shewed that if that town had ever held any adverse possession of the property, it must have commenced during the intermarriage of the plaintiffs; and it has properly been conceded on the argument, in accordance with the charge given to the jury on this point, that a title could not be acquired against Mrs. Gage by a possession taken and continued during her coverture. The defence being thus overthrown, it becomes unnecessary to consider the question which has been elaborately argued before us, whether Mr. Marshall became tenant by the curtesy of the demanded premises by the birth of his children in Canada; because that point was raised on the trial by the plaintiffs only in reply to the claim of the defendant founded on a disseisin of the plaintiff, Mrs. Gage, by the town of Norwalk; and as the facts on which that claim rested have been negatived by the jury, they require no answer.

But the defendant complains of the course taken by the

court below with the entries in the account between Quin-
tard and the town of Norwalk, and the reports to that town
of its selectmen, which were offered in evidence by the plain-
tiffs and received without objection by the defendant. He
insists that the court should not have submitted those items
of evidence to the jury, on the question whether the possession
of the demanded premises by the heirs of Mrs. Marshall was
continued to the intermarriage of the plaintiffs, but should
have instructed the jury that they did not show or tend to
show such continuance of possession, but that they showed
that the town of Norwalk took possession of the premises at
the commencement of that account. If those entries and
reports had been offered by themselves, as isolated pieces of
evidence, and not in connection with any other evidence, to
prove that the heirs of Mrs. Marshall were in possession of
the premises during the time mentioned in them, they would
clearly have been irrelevant for that purpose, and would have
tended, on the contrary, to prove the possession to have been
in the town of Norwalk, because they would have shewn the
receipt of the rent by Quintard for and on behalf of the town
and as its agent, from which the possession of the premises
by the town, through him as its agent, might have been in-
ferred in the absence of any other evidence explaining it.
And if those items of evidence had been thus offered alone,
the court should have either excluded it from the considera-
tion of the jury, or informed them that such was its effect.
But they were not introduced as evidence by the plaintiffs
by themselves, as distinct and separate pieces of testimony,
nor does it appear that they were offered for the purpose of
proving, disconnected from other evidence, a possession of
the land by the heirs during the time embraced by them.
They were adduced in connection with the other evidence
mentioned in the motion, which had been introduced by the
plaintiff to show such a possession by those heirs; and were
relevant, in connexion with that evidence, to prove that the
rents of the property, which were claimed to have been by
Quintard, as the agent of the heirs, received and paid over
to the town for Henry's support, were in fact thus paid over

for that purpose, and not for the purpose of accounting to the town for rent of land received by him as the agent of the town from its tenants; in other words, that the amount of the rent was by him received from the occupants of the land and paid to the town, and by the latter received of him as the agent of the heirs and not of the town. The evidence, thus taken together, none of which was conclusive in its character, was proper to explain the manner and purpose of the payment by Quintard to the town, and to show that it was received by the town under such circumstances as not only repelled the inference that it was received through him, as its agent, from the occupiers of the land as rent, which might otherwise be drawn from it, but that the heirs were in possession of the land by their reception of the rent, through Quintard as their agent, from the tenants. We think, therefore, that as the entries and reports in question were not offered or claimed to be used as isolated evidence, but only in connexion with other testimony, it was not the duty of the judge below to treat it as being detached from the evidence with which it was offered, and to charge upon its effect as such, but that he properly submitted both to the jury for them to consider upon the fact to prove which it was adduced. Although those entries and reports, if adduced alone, might have been inadmissible for the plaintiffs, they were made relevant and available to them by their connection with other testimony, and therefore it was proper that they should not be rejected or considered separately, but, with such other testimony, be submitted to the jury. We do not advise a new trial.

In this opinion the other judges concurred.

New trial not advised.